Beranek v. Beranek, 113 Wis. 272.

BERANEK, Respondent, vs. BERANEK, imp., Appellant.

*January 29—February 18, 1902.*

*Ejectment: Exemptions: Homestead in leasehold: Surrender by husband alone: Evidence: Presumptions: Eviction: Husband and wife: Abandonment of homestead: Statutes: Practice: Verdict and judgment in ejectment: "Findings:" Damages: Amount exceeding demand.*

1. Under sec. 2983, Stats. 1898, providing that the homestead exemption shall extend to any estate less than a fee held by any person by lease or otherwise, the occupancy of a house under a five-year lease constitutes such premises the homestead of the occupant.
2. Under sec. 2203, Stats. 1898, providing that no alienation by a married man of his homestead shall be valid or of any effect without the signature of the wife to the same, a husband cannot, by assignment or surrender, alienate his homestead, consisting of a leasehold estate, without the signature of his wife to the instrument.
3. In an action of ejectment to recover a leasehold estate, a judgment, rendered in an action for unlawful detainer, was offered in evidence, but not preserved in the bill of exceptions. The complaint in the action for unlawful detainer, preserved in the

bill of exceptions, alleged that the term created by the lease "by the act and contract of the parties was terminated." The demised premises constituted the homestead of the lessee, and the written surrender was made by the husband without the wife's signature. *Held,* that the judgment must be presumed to have followed such complaint, and did not justify the eviction of the wife from the premises.

4. A married man, who, with his family, occupies a homestead, consisting of a leasehold, may, in good faith, rent another house and move his household goods thereto, and he thereby relieves himself of the disability to alienate such homestead without his wife's signature.

5. In such case the wife's refusal to follow him does not preserve the status of the homestead as to her.

6. Where a statute requires a "verdict" to specify a particular fact which shall have been established on the trial, such requirement applies to the "findings" by the court, where a jury has been waived.

7. In actions of ejectment, subd. 7, sec. 3084, Stats. 1898, requires that the "verdict," if rendered in plaintiff's favor, shall specify the estate which shall have been established on the trial, and sec. 3086 provides that the judgment in such actions shall be in accordance with the verdict or decision of the court. *Held,* that where a jury is waived, findings and judgment thereon which fail to adjudicate the quality or extent of the title upon which plaintiff's right to possession depends are erroneous.

8. Where the demand for judgment in the complaint is not amended, the entry of a judgment beyond the amount claimed is irregular and erroneous.

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Reversed.*

On March 23, 1897, Frank Beranek, plaintiff's husband, took a lease of a vacant lot in the city of La Crosse from the defendant *John Beranek,* his father. The lease was in the usual form, for a term of five years, and the rent to be paid was the taxes on the property. Very soon thereafter said defendant borrowed $500, giving a mortgage on the property leased, which, with the sum of about $260 furnished by Frank, was used in building a house on the leased premises. About June of that year, Frank moved into the house with his

family, and occupied it as a homestead. Soon after moving in, Frank was taken sick. He failed to pay the taxes and was without money. In the spring of 1899 he desired to go to Denver for his health. It was then agreed that his father should repay him the $260 he had advanced to build the house, and he thereupon executed a written surrender of his lease; reciting that he was unable to comply with its terms, and that it was made upon the consideration of a return to him of the sum above mentioned. The plaintiff did not sign the paper. He thereupon rented a house in another part of the city, and sent a team to remove his household goods thereto. The plaintiff refused to move. Thereafter the defendant *John Beranek* began an action of unlawful detainer against Frank, and obtained a judgment for the restitution of the premises, under which plaintiff was ousted from the premises in June, 1899. Frank rented a house on Eleventh street, and moved his family thereto. Soon thereafter he went to Denver, but, not being benefited, he returned, and died at La Crosse on October 23, 1899, from consumption. In July, 1900, the plaintiff brought this action of ejectment to recover possession of the premises, and claimed $100 damages. The evidence on the trial detailed the facts as hereinbefore set forth. A jury was waived, and the court made findings, among other things, that the lot in question was Frank Beranek's homestead at the time of his death, and that he had no other dwelling place or home; that the defendant *Joseph Beranek* was occupying the premises as the tenant of the other defendant; that the use of the premises was worth $7 per month; that the same descended to plaintiff; and that she was entitled to judgment for the possession and $112 damages. A judgment was duly entered that the plaintiff "do have and recover of the defendants . . . the possession of the premises described in the complaint," and the sum of $112 damages, and costs. The judgment failed to determine the nature or extent of her title, and is for

the sum of $12 more damages than was demanded in the complaint. Exceptions to the findings were duly filed. Defendants requested findings to the effect that Frank Beranek rented and prepared a new home for his family, but that plaintiff refused to move; and also covering other matters deemed material to their defense. The court refused so to find, and defendants duly excepted. The defendant *John Beranek* takes this appeal.

For the appellant there was a brief by *Higbee & Bunge,* and oral argument by *E. C. Higbee*

*C. L. Hood,* for the respondent.

BARDEEN, J. Under our statute (sec. 2983, Stats. 1898), there can be no doubt but that a homestead may be secured in premises held under a lease. It is also true that, in so far as leased property is susceptible of being conserved as a home, it is governed by the same rules that apply to homesteads based upon property held by more enduring titles. Waples, Homestead & E. 113. Our law has wisely provided that no alienation by a married man of his homestead, exempt by law from execution, shall be valid or of any effect without the signature of the wife to the same. Sec. 2203. The attempt of the defendant to justify plaintiff's removal from the premises under the proceedings for unlawful detainer alone must fail, because they were based upon a written surrender made by the husband without his wife's signature. The judgment in the unlawful detainer action is not preserved in the record, but we must presume that it followed the complaint, which was put in evidence. That document shows that the ground of defendants' suit was "that the term created by said lease expired, and by act and contract of the parties was terminated, on the 17th day of May, 1899." This shows very clearly that defendant was seeking to enforce an attempt of the husband to alienate his homestead without his wife's signature. It is said that notice to quit was served,

for failure to pay rent. Had the unlawful detainer proceedings been based upon that fact, no doubt the judgment would have been binding on plaintiff, and the homestead interest would have been terminated. Assuming, however, that the judgment was based upon the invalid surrender of the lease, it cannot be allowed to accomplish a purpose which the husband could not accomplish because of his disability under the statute.

Another reason urged why the judgment in this case is unwarranted is that the undisputed evidence shows that the husband abandoned his homestead. Such evidence shows that in the spring of 1899 the husband was ill with consumption. He had no money or property except the small amount he had invested in the house on the lot in question. He desired to try a change of climate. He agreed with his father to surrender the lease upon consideration that he be repaid the sum he had contributed to build the house. He rented a house in another part of the city, but the plaintiff refused to move or to allow the household goods to be taken thereto. The intention of the husband to secure a new home, and the renting of another house for that purpose, are beyond dispute. His right to change his domicile, and to surrender and abandon his former homestead by leaving the old one and securing a new one, has been recognized and admitted in this state. This he may do in utter defiance of his wife's wishes or desires, and here we strike a somewhat curious anomaly in the law. The statute says that a husband cannot sell or mortgage his homestead without his wife's signature. Speaking of the purpose and policy of the statute, this court said in the recent case of *Cumps v. Kiyo*, 104 Wis. 656:

"The policy of the statute indicated is not to give the wife a mere personal right for her personal benefit, which she may waive, or be estopped by her conduct from insisting upon, but to protect the home for the benefit of the family, and every member of it,—a beneficent policy of the highest character,

calling for a broad, liberal application of the statute, so as to carry it out fully in letter and spirit."

This was said in a case where it was attempted to enforce an estoppel against the wife to the prejudice of her homestead rights. But with all the liberality of construction, and the desire to preserve the homestead right in its fullest fruition, there are limitations and restrictions surrounding it which are regarded quite potential for its destruction. In the first place, the homestead law creates no estate in the wife, living the husband. It only creates a disability on the part of the husband to alienate the homestead without her consent, evidenced by her signature to her alienation. This was said by Chief Justice RYAN in *Godfrey v. Thornton,* 46 Wis. 677, and reiterated by Mr. Justice WINSLOW, with the approval of the court, in *Town v. Gensch,* 101 Wis. 445. In the former case it was further said:

"The law has not hitherto undertaken to prohibit a husband to change his domicile without his wife's consent, or to release the wife from her reasonable duty to accompany her husband upon his change of domicile. *Gleason v. Gleason,* 4 Wis. 64. Upon such change the husband's former place of residence ceases to be the homestead, and he may mortgage or convey it without his wife's signature, subject to her inchoate right of dower. The husband cannot by his own act divest his wife's right of dower, because it is an estate. But he can by his own act free himself from his disability to mortgage or convey his homestead without the signature of his wife, because his disability vests no estate in her. *And this is the plainer, because the husband, abandoning his homestead, and so freeing himself from his disability to alienate it, has no duty imposed upon him to acquire another to which the disability would attach.*"

This rule finds support in the following authorities: Thomp. Homestead & E. §§ 276, 483; Waples, Homestead, 582, § 7; *Hand v. Winn,* 52 Miss. 788; *Brown v. Coon,* 36 Ill. 243; *Burson v. Dow,* 65 Ill. 146; *Stewart v. Mackey,* 16 Tex. 56; *Slavin v. Wheeler,* 61 Tex. 654; *Guiod v. Guiod,* 14

Cal. 506.   In the case last mentioned, Chief Justice Field discusses the question thus:

"The statute confers upon the wife no right to the homestead independent of the husband, which she can enforce against his consent.   It affords protection to him, and only through him to the wife and children.   It does not purport to interfere with the natural dependence of the latter upon the former.   She is bound by her marital obligations to live with him, and when he changes his place of residence she must accompany him.   There is no obligation resting upon him to permanently occupy the same place.   Indeed, the highest interests of himself and family, their health and maintenance, and the proper education of his children, may require a relinquishment of the homestead.   As by his act the premises were originally impressed with the character of a homestead, so by his act they may be abandoned as such.   The wife, from the nature of her dependent relation to her husband,—a relation not only essential to the peace and happiness of the family itself, but to the well-being of society,— must abide the consequences of such abandonment."

Thus it is seen that, while the husband may not alienate or incumber his homestead without his wife's consent, he may relinquish or abandon it at will without her consent or against her wishes.   This results from the dependent condition of the wife, and the giving of the husband, as the *head* of the family, the right to make and select the family domicile.   If it be thought there is anything amiss in this condition of things, it is for the legislature, and not the courts, to afford a remedy.   Applying the law to the facts presented in this case, we cannot escape the conclusion that the evidence shows a relinquishment and abandonment of the homestead in question by Frank Beranek in his lifetime, binding upon his wife, and fatal to the recovery herein.   It is not to be understood that such homestead right can be defeated by the husband abandoning his family and leaving them to shift for themselves.   Such was not this case.   The husband, in apparently good faith, decided to change his home, rented an-

other house, and sought to move his family thereto. He had an absolute right to do so, and thus relieve himself from the disability of the statute. The refusal of the wife to follow him did not preserve the status of the homestead.

The judgment in this case was faulty because it does not follow the statute. Subd. 7, sec. 3084, requires that the "verdict" shall specify the estate which shall have been established on the trial by the plaintiff, if rendered in his favor, whether it be in fee, dower, for life, or for a term of years; and sec. 3086 says that judgment shall be in accordance with the verdict or decision of the court. While the statute requires that the "verdict" shall specify the estate established on the trial, this must be construed to apply to findings of the court as well, where a jury has been waived. There must be a foundation for the judgment, which is only afforded by the verdict of the jury or the finding of the court. It is just as essential that the finding should specify the estate established, as that the verdict should do so. The fault here is that neither the findings nor the judgment find or adjudicate the quality or extent of the title upon which plaintiff's right to possession depends. That this is essential has recently been determined by this court. *Emerson v. Pier,* 105 Wis. 161; *Grindo v. McGee,* 111 Wis. 531. Whether an error in this respect would necessitate a reversal would depend upon an application of the rules as stated in *Brown v. Griswold,* 109 Wis. 275.

Another objection to the judgment is that the amount of damages included therein is greater than the demand in the complaint. Technically, the court has no right to grant greater relief than has been demanded.

"In all actions sounding in damages the plaintiff is limited by his demand therefor in his declaration or complaint, and can recover no more than the amount specified." 5 Ency. of Pl. & Pr. 712.

Ordinarily the courts will allow the demand for judgment to be amended on request. That was not done in this case, and the entry of judgment beyond the amount claimed in the complaint was irregular and erroneous.

*By the Court.*—The judgment is reversed, and the cause is remanded, with direction to enter judgment for defendant pursuant to law.