Bonnie K. JENZAKE, Plaintiff-Respondent,

v.

CITY OF BROOKFIELD and Employers Insurance of Wausau, Defendants-Appellants.

Court of Appeals

No. 81–1788. Submitted on briefs May 5, 1982.—
Decided June 23, 1982.
(Also reported in 322 N.W.2d 516.)

For the defendants-appellants the cause was submitted on the brief of *John P. Higgins* of the *Law Offices of C. Donald Straub* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *T. Michael Schober* of *Schober & Radtke* of New Berlin.

Before Voss, P.J, Brown and Scott, JJ.

BROWN, J.   This appeal deals mainly with a party's duty to supplement an interrogatory which had tendered no names of expert witnesses but which was proven to be

inaccurate when the plaintiff appeared with an expert on the day of trial. The trial court allowed the evidence, and the appellants contest the ruling. Because there was no showing of hardship, we affirm.

Plaintiff Bonnie Nielsen, formerly Jenzake, owns a home in the Westchester subdivision of Brookfield, a wooded area having willow and pine trees. The home is connected to a sanitary sewer line maintained by the city of Brookfield. On March 4, 1979, she discovered four to five feet of water in her basement. The city's sewer department came and investigated, ultimately removing a blockage from the sewer line later that evening. The blockage consisted of tree roots.

Previous to this date, the plaintiff had, at least twice, experienced problems with water coming up through the basement floor drain. The city was aware of root problems in the Westchester subdivision and, on a number of occasions, had cleaned the lines with either a sewer jet or a root cutter. It also inspected the lines on a quarterly basis.

Following the March 4 occurrence, two sewer department employees told the plaintiff that the damage to her home was the fault of the city and that the city had not cleaned the sewer lines as often as it was supposed to. The plaintiff sued, claiming that, although aware of root blockage problems, the city negligently failed to maintain and repair the sewer line.

In preparation for trial, the city sent a list of interrogatories to the plaintiff. One question asked the names of expert witnesses. The plaintiff replied, "none to date." At trial, the city became aware that the plaintiff intended to call an expert. The city moved, *in limine,* for an order prohibiting the testimony because the plaintiff had failed to supplement her original response, thus failing in her burden to provide updated disclosure of expert witnesses. The trial court took the motion under advisement pending an offer of proof by the plaintiff

and eventually denied the motion. Further facts as are necessary will be stated in the opinion.

The focus of our attention is first directed to sec. 804.01(5) and (5) (a), Stats.:

(5) SUPPLEMENTATION OF RESPONSES. A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired, except as follows:

(a) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to 1. the identity and location of persons having knowledge of discoverable matters, and 2. the identity of each person expected to be called as an expert witness at trial.

The first sentence states that no duty to supplement can be imposed except as provided. The exceptions contained in subsection (5) (a) are appropriate, since the names of expert and lay witnesses are routinely available to all parties under sec. 804.01(2) (a), Stats., and since the burden of updating a list of witnesses is slight. Graczyk, *The New Wisconsin Rules of Civil Procedure Chapter 804*, 59 Marq. L. Rev. 463, 476 (1976). By requiring a party to routinely supplement a response to a demand for the names of expert witnesses, the rule eliminates the need for repetitious demands. *Id.* at 476–77.

In this case, there can be no doubt that the plaintiff was required to supplement her response. She argues that the city's inquiry was not "directly addressed to the identity of experts expected to be called . . . at trial" as required by the language of sec. 804.01(5) (a), Stats. The interrogatory submitted is as follows:

Interrogatory No. 7: State the names and addresses and telephone numbers known to you or to anyone acting in your behalf, of all expert witnesses and employers who have been asked to render an opinion as to any issue, question or problem arising out of or incidental to the

accident, occurrence, happening or event alleged in the complaint filed herein . . . .

Presumably, the argument is that, since the interrogatory did not specifically ask for supplementation should an expert be after-acquired, the interrogatory did not activate the statutory duty to supplement pursuant to sec. 804.01(5)(a), Stats. The plaintiff's argument is meritless. Anytime a list of expert witnesses is requested, certainly all trial experts must be acknowledged even if after-acquired. We conclude that the plaintiff had a duty to disclose the expert's identity.

We next consider secs. 804.12(4)(d) and 804.12(2)(a)1, 2 and 3, Stats., dealing with sanctions against recalcitrant parties. The pertinent parts of sec. 804.12 (4)(d), Stats., are as follows:

(4) FAILURE OF PARTY TO ATTEND AT OWN DEPOSITION OR SERVE ANSWERS TO INTERROGATORIES OR RESPOND TO REQUEST FOR INSPECTION OR SUPPLEMENT RESPONSES. If a party . . . fails . . .

(d) seasonably to supplement or amend a response when obligated to do so under s. 804.01(5), the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others, it may take any action authorized under sub. (2)(a) 1, 2 and 3.

The pertinent parts of sec. 804.12(2)(a) 1, 2 and 3, Stats., are as follows:

[T]he court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
1. An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
2. An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or

prohibiting the disobedient party from introducing designated matters in evidence;

3. An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party; . . . .

Section 804.12, Stats., is arguably the most important rule in the discovery chapter for it "supplies the sanctions necessary to deter parties from either unjustifiably evading full disclosure or simply refusing to respond to discovery at all." Graczyk, 59 Marq. L. Rev. at 523.

One of the most drastic sanctions in sec. 804.12(2)(a) 1, 2 and 3, Stats., is the power of the trial court to strike pleadings. The powers to hold certain facts established, to preclude the introduction of evidence not produced for discovery, and to strike a portion of the pleading, are all lesser powers which are included in the power to strike the whole pleading. *Dubman v. North Shore Bank,* 75 Wis. 2d 597, 600, 249 N.W.2d 797, 799 (1977).

The city, in this case, asked the trial court to prohibit the introduction of expert evidence, one of the lesser sanctions. Yet, although it is a "lesser" sanction than striking the full pleadings, it is still a drastic remedy. *Fredrickson v. Louisville Ladder Co.,* 52 Wis. 2d 776, 784, 191 N.W.2d 193, 196 (1971).

In *Fredrickson,* the supreme court reviewed a trial court's refusal to exclude testimony of a witness whose identity had not been revealed to the opposing party as required by a court order directing disclosure of the names of witnesses. Although *Fredrickson* dealt with a violation of a prior court order directing exchange of expert witnesses rather than a failure to supplement a response, we believe *Fredrickson* is controlling because it meets the same policy goals treating allegations of unfair concealment of expert witnesses.

*Fredrickson* recognized that the trial court has the discretion to exclude the testimony of a witness if a party is prejudiced by opposing counsel's failure to inform him that the witness would be called. *Id.* at 782, 191 N.W.2d at 196. Two questions must be considered: first, whether the party had reason to believe the witness would be called, and, second, whether the unfair surprise outweighed the probative value. *Fredrickson,* 52 Wis. 2d at 783, 191 N.W.2d at 196. *See also Meurer v. ITT General Controls,* 90 Wis. 2d 438, 454, 280 N.W.2d 156, 164 (1979).

The *Fredrickson* court noted that the drastic measure of excluding a witness should be avoided by giving the surprised party more time to prepare, if possible. 52 Wis.2d at 784, 191 N.W.2d at 196. Continuance is the more appropriate remedy for surprise; exclusion should be considered only if a continuance would result in a long delay. *State v. O'Connor,* 77 Wis. 2d 261, 287–88, 252 N.W.2d 671, 682 (1977).

The city had no reason to believe the plaintiff would call an expert witness. The question remains whether the surprise was unfair, and, if so, whether the unfair surprise outweighed the probative value of the evidence.

In determining the answer, this court will consider the reasons the trial court gave for its ruling, as well as the opportunity the surprised party has had to evaluate the surprise testimony and the extent to which the surprised party has been able to cross-examine concerning the surprised testimony. *Meurer v. ITT General Controls,* 90 Wis. 2d at 455, 280 N.W.2d at 164–65.

One of the reasons for the trial court's refusal to grant the requested sanction here was that the city had a witness who, although a city employee and not an outside expert, supervised the maintenance and repair of the city of Brookfield sewer lines. We believe this to be important because this particular city employee could help evaluate the surprise testimony and perhaps lend a helping hand

in preparation for cross-examination of the plaintiff's expert. Thus, the hardship to the city had at least the prospect of being lessened to some extent.

More importantly, however, we note that the trial court did not allow the expert to testify without first directing the plaintiff to place the expert on the witness stand, by way of an offer of proof, outside the jury's presence. Plaintiff's counsel was directed to ask the questions that would be inquired of the witness in front of the jury, and the witness was directed to answer. Following the offer of proof, the trial court asked the city's counsel if there were any objections to having the jury hear the testimony. The city's counsel reiterated a request for the sanction of exclusion but did not state by what manner the witness' testimony would pose a hardship. Specifically, no request was made for an interval of time to verify the expert's qualifications or to analyze and examine the basis for the expert opinion. No demonstration was made by the city that it was necessary to depose the expert or other experts. In short, no showing of hardship was made. The trial court denied the motion to exclude, the expert gave his opinion to the jury, and the expert was subjected to cross-examination.

Had a showing of hardship been made and a continuance requested, we might have had a different result. Our reading of the record is that the trial court may well have believed that a continuance would have been a suitable remedy in this case had it been requested and had grounds of hardship been explained to the trial court.

We do not condone plaintiff's conduct and admonish counsel to henceforth step in line with the spirit of the discovery statutes. As stated in *State ex rel. Dudek v. Circuit Court,* 34 Wis. 2d 559, 577, 150 N.W.2d 387, 397 (1967):

[W]e shun any rule which would tend to encourage indolence or lying back in pretrial investigation or which

would tempt an attorney to unfairly conceal the results of investigations [he] ha[s] made.

At the same time, we caution the bar that it is not enough to show concealment in violation of the discovery rules as grounds for a drastic remedy. One must make a record showing how the concealment unfairly affects the party's ability to adequately try the case and must request a continuance, unless it is felt a continuance is unworkable. Even in that case, counsel should demonstrate to the trial court why a continuance is not an appropriate remedy. In the absence of such showing in this case, we affirm the trial court's denial of the request to exclude plaintiff's expert witness.

The city has three other issues. One issue relates to testimony by the plaintiff and the plaintiff's neighbor that two city employees told them that the sewer backup was due to the city's negligence. The city claims it is inadmissible hearsay. We disagree. The statements constitute admissions against interest and, therefore, do not constitute hearsay. Rule 908.01(4)(b) 4, Stats., requires only that an agent make a statement concerning a "matter within the scope of his agency or employment, made during the existence of the relationship . . . ." The city then claims that if Rule 908.01(4)(b) 4, Stats., is applicable, then no proof exists regarding either the scope of the agency or the existence of the relationship. The claim is of no merit. This argument was not the basis for the city's objection at trial and is subject to waiver. Moreover, there *was* proof of the employees' identification, and, further, there was proof that public works employees were sent to the Nielsen home to investigate the cause of the backup and clear the laterals to the home. Therefore, the city's argument fails.

The next issue relates to sufficiency of the evidence. As the city concedes, it is liable for damages if the plaintiff shows that the city has failed, within a reasonable time, to remedy a defect that was actually or constructively known to exist. *Frietag v. City of Montello*, 36 Wis. 2d 409, 414, 153 N.W.2d 505, 507 (1967).

The city notes, however, that the city is not liable for damages resulting from the failure of the sewer to function as a result of an extraordinary storm. *Trustees of University Co-operative Co. v. City of Madison*, 233 Wis. 100, 110, 288 N.W. 742, 746 (1939). The city points out that rain had fallen just prior to the plaintiff's mishap. It also points to evidence that 1979 was a bad year for snow, and excessive melting was occurring around March 4. The city's wastewater manager testified that he felt this was an extraordinary situation, and, therefore, the jury's factual finding should not be allowed to overcome the evidence adduced by the city.

In deciding sufficiency of evidence issues, however, we must view the evidence in a light most favorable to the verdict, and the jury's verdict should be affirmed if supported by the evidence, particularly when the verdict has the approval of the trial court. *Roach v. Keane*, 73 Wis. 2d 524, 536, 243 N.W.2d 508, 515 (1976). When more than one inference can be drawn from the evidence, the appellate court must accept the inference drawn by the jury. *Valiga v. National Food Co.*, 58 Wis. 2d 232, 244, 206 N.W.2d 377, 384 (1973).

We find more than just the inference suggested by the city. Our review of the testimony shows that credible evidence existed to support the finding that the city failed, within a reasonable time, to remedy a defect that was actually or constructively known to exist. The city's wastewater treatment manager acknowledged that the plaintiff's home was in an older subdivision and prone to backups. He admitted to knowledge of a root growth

problem in the subdivision and even had suggested to the city that the sewer system be replaced. The record further shows that blockages had to be removed a number of times in a problem area which included the plaintiff's address. Inspections were conducted quarterly in the problem areas, and cleaning was done annually. Moreover, the inspections consisted of workers simply opening manhole covers and looking in. The city wastewater manager admitted that workers could not determine from the quarterly inspections whether the sewer line could handle the full eight-inch capacity of flow.

The plaintiff's expert testified that remote control televisions could and should have been rented to investigate the problem areas and that the rental was not expensive. Further, he opined that the cleaning should be done bi-monthly and that a sewer rooter was the best tool to use in maintaining control of any substantial tree root problems.

Based upon the evidence presented, the jury was given a choice between two competing inferences as to the cause of the backup. It was instructed that the city is not responsible if an extraordinary or unprecedented amount of water existed at the time of the damage. The jury chose to reject that inference and accepted the inference that the backup was the city's fault. We will not disturb the verdict.

The final issue is that the testimony of the plaintiff's expert should have been stricken because there was no showing that the expert had ever personally inspected the problem area or the city of Brookfield sewer system for that matter. This was never a basis for objection at trial and is therefore waived. *Goranson v. Department of Industry, Labor & Human Relations,* 94 Wis. 2d 537, 545, 289 N.W.2d 270, 274 (1980).

*By the Court.*—Judgment affirmed.